UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JUL 1 1 2001

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| JERRY OWENS AND SANZANNA TOLES | * | CIVIL ACTION |
| VS. | * | NO. 00-0147 |
| R. J. REYNOLDS TOBACCO COMPANY, | * | SECTION "K" |
| RJR NABISCO, INC., BROWN & | | |
| WILLIAMSON TOBACCO CORPORATION, | * | JUDGE DUVAL |
| BATUS, INC., BATUS HOLDINGS, INC., | | |
| THE AMERICAN TOBACCO COMPANY, INC. | * | MAGISTRATE 4 |
| AMERICAN BRANDS, INC., THE COUNSEL | | |
| FOR TOBACCO RESEARCH--USA, INC., | * | |
| THE TOBACCO INSTITUTE, INC. | | |
| BRITISH AMERICAN TOBACCO | * | |
| INDUSTRIES, PLC., QUAGLINO | | |
| TOBACCO AND CANDY COMPANY, INC., | * | |
| IMPERIAL TRADING COMPANY, INC., | | |
| GEORGE W. GROETSCH, INC., and | * | |
| SCHWEGMANN GIANT SUPER MARKETS, | | |
| INC. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

Plaintiffs move this Court to remand this case back to state court. After delaying this case for over a year and a half, the defendants still have not been able to meet their heavy burden of proving fraudulent joinder. The prosecution of this action is long overdue; it is time for this matter to be remanded back to state court.

In order to prevent the defendants from continued delay, some Federal Judges have already ordered immediate remand in virtually identical cases. In Cooper v. Brown & Williamson Tobacco Corp. et al, No. 00-2539, Judge Berrigan remanded a virtually individual tobacco case

citing federal case law supporting remand. (See <u>Cooper</u> decision attached to this remand).  Also, in <u>Denise Murphy, et al. v. R.J. Reynolds Tobacco, et al.</u>, No. 00-2457, Judge Fallon remanded a similar individual tobacco case citing federal case law supporting remand. (See <u>Murphy</u> decision attached to this remand).[1]

This saga began when plaintiffs filed this case over a year and a half ago on December 28, 1999, in the Parish of Washington, State of Louisiana, on behalf of Jerry Owens and his daughter. The plaintiff, Jerry Owens, was diagnosed with lung cancer after smoking since the age of fourteen.  Mr. Owens purchased these cigarettes from local Louisiana retailers and distributors including the defendant, Schwegmanns Giant Supermarkets.

Despite plaintiffs having brought this action in the 22nd Judicial District Court for the Parish of Washington, the defendants removed this matter to Federal Court claiming that the distributor and retailer defendants were fraudulently joined in order to defeat diversity jurisdiction.  In making said claim, the defendants incorrectly asserted that there were not genuine State law claims against the said defendants.

Following the defendants removal, the plaintiffs filed a motion to remand which was set for hearing on March 29, 2000.  The defendants then sought to have an administrative stay placed on virtually all individual tobacco cases in the state, in which the local retailers or distributors were being sued under a redhibition claim.  This stay was to be in effect until the outcome of <u>Badon v. R.J. Nabisco, Inc.</u> No. CV98-0215 (W.D. La. 4/17/98), <u>appeal docketed</u>, No. 98-30942 (5th Cir. 8/28/98).  The <u>Badon</u> court was deciding whether redhibition claims could be brought

_____

[1]Some federal judges have allowed limited discovery.

against retailers and distributors who sold and/or distributed defective cigarettes. Id.  The defendants contended that the outcome of Badon was of supreme importance and would resolve the fraudulent joinder question in all of the individual tobacco suits that they had removed to Federal Court. Id.

On March 27, 2000, this court stayed this matter placing this case on hold for virtually a year until the Court of Appeals issued its mandate in Badon on March 1, 2001.  Id.  However, after a year of delay, the Badon court ruled against the defendants and held that redhibition claims could be brought against retailers and distributors, effectively nullifying the defendants fraudulent joinder argument. Id.

Shockingly, after the Badon decision, the defendants sought additional delay by asking this court for additional time to conduct discovery to determine if the retailers and distributors had been fraudulently joined. Id. This court granted the defendants additional time to conduct limited discovery but gave them a June 18, 2001, discovery cut off to avoid any additional unnecessary delays.  Two months have passed since the defendants requested additional time to conduct discovery, yet nothing has changed.  Even after conducting discovery, the defendants have not met their heavy burden of proving fraudulent joinder.

The Defendants were granted limited discovery to determine:

1)    Whether the named distributors are in fact the distributors of cigarettes to plaintiff;

2)    Whether the named retailer is in fact the actual retailer of cigarettes to plaintiff; and

3)    Whether the claims against the retailer and distributors have prescribed.

The defendants have not met their heavy burden of proving fraudulent joinder in respect to any of the preceding three issues.

3

## THE NAMED DISTRIBUTORS AND RETAILERS ARE THE ACTUAL DISTRIBUTORS AND RETAILERS WHO SOLD CIGARETTES TO PLAINTIFF

The Defendants could not disprove the fact that the named distributors and retailers were the actual retailers and distributors of cigarettes to plaintiff.   In actuality, when the defendants searched for evidence to support their claim, evidence was found to bolster the plaintiffs case.  For example, the Defendants contended that the retailer named in the suit was not the actual retailer where the plaintiff purchased cigarettes.  However, after the defendants were granted time to conduct discovery and served interrogatories on the plaintiff, the plaintiff clearly responded at his deposition and in his answer to interrogatories that he purchased cigarettes from the named retailer, Schwegmanns. (See Exhibit "A" attached).   The Defendants clearly cannot meet their heavy burden of proving that there is absolutely no possibility of establishing a claim against the retailers and distributors.

The Fifth Circuit in <u>B., Inc.</u> stated quite clearly that where there have been allegations of fraudulent joinder it is clear that the burden is upon the removing party to prove the alleged "fraud". <u>B., Inc. v. Miller Brewing Co.</u>, 663 F.2d 545 (5th Cir. 1981) <i>Id.</i> at 549. citing <u>Yawn v. Southern Railway Co.</u>, 591 F.2d 312 (5th Cir. 1979), cert. denied, 442 U.S. 934, 99 S. Ct. 2869, 61 L.Ed.2d 3004 (1979); <u>Parks v. New York Times Co.</u>, 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 Sup. Ct. 964, 11 L.Ed.2nd 969 (1964) See also <u>Carrier v. Sears. Roebuck and Company</u>, 893 F.2d 985(5th Cir.) <u>cert. denied</u>, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed. 2d 35 (1990). The Fifth Circuit clearly mandates that the burden of persuasion placed upon the defendants who cry fraudulent joinder is indeed a heavy one.

4

In order to establish that an in-state defendant has been fraudulently joined, the defendant in this case must show that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in State Court. Id. citing Keating v. Shell Chemical Co., 610 F. 2d 328 (5th Cir. 1980). The Fifth Circuit made it clear that the lower court in deciding whether to remand a matter to the state court should assume all of the facts set forth by the plaintiff to be true and should resolve all uncertainties as to the State's substantive law against the defendant and should be able to establish that there is no possibility of a valid cause of action being set forth against the instate defendants. Only then, the Fifth Circuit states that a case should not be remanded. Id. citing Tedder v. F.N.C. Corporation, et al., 590 F.2d 115 (5th Cir. 1979). If there is even a possibility that a State Court would find a cause of action stated against anyone of the named in-state defendants on the facts alleged by the plaintiff, then the Federal Court must find that the in-state defendants on the facts alleged by the plaintiff, then the Federal Court must find that the instate defendants have been properly joined, that there is incomplete diversity, and that the case must be remanded to the State Courts. Id. citing Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962).

The Fifth Circuit has consistently recognized that "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one". Ford v. Elsbury, 32 F.3d 931, 935 (5th Cir. 1994), quoting B., Inc., 663 F.2d at 549. To prove fraudulent joinder, "the removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiffs pleading of jurisdictional facts." Cavillini v. State Farm Mu. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995), quoting Green v. Amereada Hess Corp., 707 F.2d 201, (5th Cir. 1983), cert.

5

denied, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Bd. 2d 1966(1984).

As stated in Cavallini, a court must "evaluate all of the factual allegations in the plaintiffs state court pleading in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "then examine relevant state law and resolve all uncertainties in favor of the non-removing party." 44 F.3d at 259, quoting Green 707 F.2d at 206.

Recently, all of the above standards for evaluating a claim of fraudulent joinder were summarized by the Fifth Circuit in Dodson as follows:

> **Where charges of fraudulent joinder are used to establish [federal] jurisdiction the removing party has the burden of proving the claimed fraud . . . to prove their allegations of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. We are then to determine whether the party has any possibility of recovery against the party whose joinder is questioned.**

Dodson, 951 F.3d at 42; see also Ford, 32 F.3d at 935.

At best, the Defendants have merely raised the question as to whether the distributors were fraudulently joined, but they have not and can not provide any solid proof which is required to show that there is absolutely no possibility that the named retailers and distributors are indeed the real retailers and distributors. In many instances, after conducting limited discovery, the defendants found solid evidence to support the fact that the retailer in dispute was actually the one that sold cigarettes to the plaintiff.

## THE CLAIMS AGAINST THE RETAILERS AND DISTRIBUTORS HAVE NOT PRESCRIBED

The Defendants have contended that the retailers and distributors were fraudulently joined alleging that claims against them have prescribed. Even after conducting discovery, it is even more

evident that the defendants cannot meet their heavy burden of proving that there is <u>no possibility</u> of establishing a cause of action against the retailers and distributors.

There are many factual issues that must be decided by the trier of fact prior to a ruling on prescription. Defendants will suggest that because the plaintiff may have known in 1975 or even 1985 that cigarettes were addictive his case prescribed. These defendants will also contend that since the plaintiff stopped smoking in 1991, his redhibition claim prescribed as it is more than four years. However, the trier of fact will now have to determine whether the cigarette was defective? What is the defect? Whether the seller was a bad faith or good faith seller? Whether the plaintiff was aware of the defect? When if at all plaintiff became aware of the defect? Most importantly, the trier of fact will have to answer **when did the damage occur that sufficiently put the plaintiff on notice that he had a potential lawsuit?** All of these issues must be answered by the trier of fact after extensive discovery. Plaintiffs submit that the redhibition claim does not begin to run until he has notice of the damage which is his diagnosis of cancer. Mr. Owens was diagnosed with lung cancer in January of 1999 and filed his lawsuit within one year. On its face this case has not prescribed. All other prescription issues must be resolved by the trier of fact.

Prescription and its application under Louisiana law in a redhibition case is discussed in <u>Encalade v. Coast Quality Construction Corp.</u>, (La.App. 5th Cir. 2000). The plaintiff in <u>Encalade</u> filed a redhibition lawsuit under Louisiana's redhibition statute due to a "defect" in the home he purchased. The court discussed prescription and cited the decision in <u>Beth Israel v. Bartley, Inc.</u> 579 So.2d 1066, 1072 (La.App. 4th Cir. 1991), where the Fourth Circuit stated that,

> Prescription does not commence to run until the plaintiff has actual
> or constructive **knowledge of the tortious act, the damage caused,**
> and the casual relationship between the tortious act and the damage.

Of importance to any court deciding prescription is when the damage occurs. Mr. Owens was diagnosed with lung cancer in January of 1999, and a lawsuit was timely filed within a year of the damage.

In addition, prescription has been tolled on many individual tobacco cases. In the present case, the filing of the Gloria Scott, et al. v. The American Tobacco Company, Inc., et al. 959 F. Supp. 340 (E.D. La. 1996), class action and subsequent class certification interrupted the statute of limitations period for all of the plaintiffs' claims. The United States Supreme Court has held that the filing of a class action tolls the applicable statute of limitations as to all members of the putative class. Factor VIII v. Alpha Therapeutic Corporation, 2000 WL 282787 (E.D. La. 2000), citing American Pipe and Construction Company v. Utah, 924 S.Ct. 756 (1974) and Crown, Cork & Seal Company, Inc. v. Parker, 103 S.Ct. 2392 (1983).[2]

---

[2]The rationale for this holding was to avoid unnecessary repetitive filings by individuals who wanted to join the class. Factor at 4. Also, this rule was designed to protect the rights of putative class members who were unaware that litigation had been ostensibly filed on their behalf. Id.

If class certification were subsequently denied, the prescription commenced to run again. Id. If class certification was granted, tolling continued unless and until the absent class members were notified of the litigation and were given the opportunity to either remain in the litigation and be bound by the ultimate decision, or to opt out of the class pursue their own lawsuit. Id. If a class member opted out, then prescription commenced to run from that point forward. Id.

Tolling occurs to 'asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings.' Id at 5, quoting, American Pipe at 765. The American Pipe doctrine relieves putative class members of the requirement that they must file their own lawsuit or formally intervene in order to preserve their claims. American Pipe and Construction Company v. Utah, 924 S.Ct. 756 (1974). See also, Factor at 6.

The Judgment that was read, rendered, and signed granting class certification on April 16, 1997 in <u>Scott</u> stated that, "The Court hereby reserves unto plaintiffs and members of this defined class the right to assert any claims for damages they may have sustained as a result of smoking cigarettes."[3] Therefore, any and all claims, including redhibition, breach of warranty, and wrongful death are available to plaintiffs and the prescriptive period has been interrupted in regard to their claims.

In <u>Smith v. Cutter,</u> 770 So.2d 392 (4th Cir. 2000), the Fourth Circuit affirmed the jurisprudence holding that plaintiffs' claims were not brought within a year of the tolling period that resulted from the pending class action. The filing of a class action interrupted the wrongful death claims of plaintiffs in <u>Smith v. Cutter.</u> <u>Id.</u> Analogizing the facts of this case with the <u>Smith v. Cutter</u> decision, leads to prescription being interrupted for all of plaintiffs claims as set forth by the judgment rendered in <u>Gloria Scott</u> 959 F. Supp. 340 (E.D. La. 1996). This is but one more reason to immediately remand this case.

## REDHIBITION AND BREACH OF WARRANTY CLAIMS ARE NOT PREEMPTED

The Defendants have erroneously applied relevant case law by supporting their contention that claims against the retailers and distributors have been preempted by Federal law by citing the <u>Cipollone</u> decision. <u>Cipollone v. Liggett Group Inc</u> 112 S.CT 2608(1992). However, the Defendants' have not only incorrectly applied the <u>Cipollone</u> holding as it relates to preemption, but they have taken a position that is in direct contradiction to current case law. <u>Id.</u>

The Defendants rely on <u>Cipollone</u> to support their position that the Louisiana distributors

---

[3] <u>Id</u>.

and retailers cannot be sued for their failure to warn or conceal or for their concealment of the risks associated with tobacco use. Id.

An important factor for this court to be aware of is that the Federal Cigarette Labeling and Advertising Act was passed in 1966 and that Act required the following text on all packages of cigarettes:

> CAUTION, CIGARETTE SMOKING MAY BE HAZARDOUS TO YOUR
> HEALTH.

Because the 1966 Federal Cigarette Labeling and Advertising Act did not contain a preemptive provision, common law attacks on the adequacy of the warning is permissible.  However, in 1969, federal law changed and required a substitute warning which stated as follows:

> WARNING, THE SURGEON GENERAL HAS DETERMINED THAT
> CIGARETTE SMOKING IS DANGEROUS TO YOUR HEALTH.

The 1969 Federal Law that changed the warning preempted state law claims on the adequacy of the warning labels.  It is important for this court to be aware that while no state law claims can be made regarding the adequacy of the warning labels, preemption does not apply to any product defect claims, express warranty claims, misrepresentation claims, fraud claims, conspiracy, and most importantly redhibition claims.  These claims were never preempted by the Cipollone decision and plaintiff cites the following excerpt from Cipollone:

> Thus, insofar as claims under either failure to warn theory require a showing that respondents post 1969 advertising and promotions should have included additional, or more clearly stated, warnings, that those are preempted.  The Act does not, however, preempt petitioner's claims that rely solely on  respondent's testing or research practices or other actions unrelated to advertising or promotions.

Cipollone v. LiggettGroup Inc., 112 S.Ct. at 2621-2622.

This court should be made aware of the fact that all pre-1970 claims are valid and can be asserted against the Louisiana Distributors, the Louisiana Retailers, and all tobacco manufacturers.

Furthermore, in <u>Castano et al. v. The American Tobacco Co., et al</u>, a tobacco class action filed on behalf of nicotine dependent persons in the United States, the Defendants made the identical argument that redhibition claims were preempted under Federal Law. 870 F. Supp 1425 (E.D. La. 1994). The court squarely rejected this argument, holding that redhibition claims are not preempted, and that <u>Cipollone</u> makes clear that only **failure to warn** claims are preempted under Federal Law. <u>Castano</u> at 1434. The central issue is the defect in the product(redhibition), not the adequacy of the warnings(failure to warn).

Other cases involving redhibition and preemption have produced the same results as <u>Castano</u>. <u>Id.</u> In <u>Deshotel v. Rhone-Poulenc, Inc</u>, a farmer brought an action against a manufacturing company for producing a defective pesticide. 969 F. Supp 397 (W.D. La. 1997). The Defendants in that case argued that redhibition claims were preempted by the Federal Insecticide, Fungicide, and Rodentcide Act(FIFRA). The Federal Act in <u>Deshotel</u> was similar to the Federal Cigarette Labeling Act in the present case in that the crux of Act centered around labeling. <u>Id.</u> The court held that, "...[T]he redhibition claim is not label-based, for instance if it is based on a manufacturing defect and a remedy would not 'impose or effect a labeling requirement,' FIFRA preemption does not apply." <u>Deshotel</u> at 402. See also, <u>AllState Insurance Company v. Spectrum Group</u> (E.D. La. 1998).

Plaintiff can prove his redhibition claim and breach of warranty claim to the trier of fact without having to allege that the defendants failed to warn. Plaintiff will prove 1) the cigarette

11

contained a defect or vice and 2) that plaintiff would not have purchased the cigarette had he known of the defect.  The state law claims of redhibition and breach of warranty are unrelated to labeling, advertising or promotion.  The adequacy of the warning is not an issue because the warning is not the "defect".  The "defect" is the addictive qualities and toxicity of the cigarette.  Plaintiff does not need to show that the warning was inadequate.  The adequacy of the warning does not matter to prove the redhibition claim, the "defect" is in the manufacturing process and that is what matters.  However novel the defendants arguments become, it will not change the fact that the Louisiana defendants will proceed to trial for their responsibilities under the law.

## CONCLUSION

After delaying this case for over a year and a half, the defendants still have not been able to meet their heavy burden of proving fraudulent joinder.  The prosecution of this action is long overdue; it is time for this matter to be remanded back to state court.

DATED THIS __2ⁿᵈ__ day of ___July_____, 2001.

Respectfully submitted,

MURRAY LAW FIRM
STEPHEN B. MURRAY (9858)
PERRY M. NICOSIA (21777)
DAVID T. SMITH (26721)
909 Poydras Street
Suite 2550
New Orleans, LA 70112
Telephone: (504) 525-8100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Supplemental Memorandum in Support of Plaintiffs' Motion to Remand has been served upon all counsel of record by U. S. mail this 2ⁿᵈ day of _____July_____, 2001.

PERRY M. NICOSIA

13

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY OWENS AND SANZANNA TOLES | * | CIVIL ACTION |
| VS. | * | NO. 00-0147 |
| R. J. REYNOLDS TOBACCO COMPANY, | * | SECTION "K" |
| RJR NABISCO, INC., BROWN & | | |
| WILLIAMSON TOBACCO CORPORATION, | * | JUDGE DUVAL |
| BATUS, INC., BATUS HOLDINGS, INC., | | |
| THE AMERICAN TOBACCO COMPANY, INC. | * | MAGISTRATE 4 |
| AMERICAN BRANDS, INC., THE COUNSEL | | |
| FOR TOBACCO RESEARCH--USA, INC., | * | |
| THE TOBACCO INSTITUTE, INC. | | |
| BRITISH AMERICAN TOBACCO | * | |
| INDUSTRIES, PLC., QUAGLINO | | |
| TOBACCO AND CANDY COMPANY, INC., | * | |
| IMPERIAL TRADING COMPANY, INC., | | |
| GEORGE W. GROETSCH, INC., and | * | |
| SCHWEGMANN GIANT SUPER MARKETS, | | |
| INC. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ANSWERS TO DEFENDANTS
## FIRST SET OF INTERROGATORIES

NOW INTO COURT, through undersigned counsel, comes plaintiffs Jerry Owens and

Sanzanna Toles, who respond to Defendants Interrogatories, as follows:

INTERROGATORY NO. 1:

State the full name, including any former names or aliases, present residential address,

date and place of birth, driver's license and social security number of each of the plaintiffs Jerry

Owens (if living) and Sanzanna Toles.



ANSWER TO INTERROGATORY NO. 1:

1.    Sanzanna Copernita Toles resides at 1331 North Sherwood Forest Drive, #227,

Baton Rouge, LA 70815.  She was born on October 13, 1997 in Hopkinsville Kentucky.  Her

drivers license number is La- 007079426 and her social security number is 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.

2.  Jerry Delos Owens resides at 2756 Bartlett Street, Baton Rouge, La 70805.  He was

born on December 15, 1948 in Bogalusa, La.  His drivers license number is 5362935 and his

social security number is 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.


INTERROGATORY NO. 2:

Provide the complete marital history for each of the plaintiffs Jerry Owens and Sanzanna

Toles, including the full name, former name(s) and aliases of any spouse(s), dates and places of

marriages, dates of any legal separation, dates of any divorce, and the present or last known

addresses and telephone numbers of any former spouses.

ANSWER TO INTERROGATORY NO. 2:

Sanzanna Toles has never been married.

Jerry Owens was married to Karen Joseph Ownes.  They were married in July of 1990

and separated in April of 1998.  She resides in Lafayette, LA.  No other information is known.

Jerry Owens was also married to Waudine Barnes Owens.  They were married in January

of 1970 and divorced on May 21, of 1990.  Her address is unknown.


INTERROGATORY NO. 3:

If deceased, state the full name, including any former names or aliases, date and place of

2

birth, date and place of death, and social security number of Jerry Owens.


ANSWER TO INTERROGATORY NO. 3:

 Jerry Owens is not deceased.

INTERROGATORY NO. 4:

 State the full name, including any former names or aliases, present or last known address

and telephone number, date and place of birth, and date and place of death (if applicable), of each

of Jerry Owens' children, parents, grandparents, aunts, uncles, brothers, and sisters.

ANSWER TO INTERROGATORY NO. 4:

 Son-Jerry Owens. Born on April 15, 1970 in New Brunswick, NJ.

 Uncle-Wilma Owens. Born in 1904 in Sandy Hook, MS. He currently resides in

Bogalusa, LA.

 Aunt-Maudell Peters. She resides in Bogalusa, LA.

 Brother-Thomas James Owens. Born on April 23, not sure of year. Born in Angie, LA.

He resides in Bogalusa, LA.

 Brother-Claudell Owens. Born in Angie, LA on 8/28/44. He resides in Milwaukee, WI.

 Brother-Samuel Owens, Jr. Died in January of 1988 in New Orleans. Born on 1/4/46 in

Sandy Hook, MS.

 Sister-Doretha Owens Abram. Born 8/19/32 in Sandy Hook, MS. Her address is 3301

Dickens Drive, Algeria, LA. Phone- 504-394-8023.

 Sister-Edna Pearl Owens Henry. Born in April of 1936 in Sandy Hook, MS. Her address

is 1226 Independence, St, New Orleans, LA. Phone-504-948-2141.

Sister-Helen Owens Moses.  Born on 11/6/40.  Her address is The Care Center nursing home in Baton Rouge, LA.

Mother-Annie May Peters-deceased.

Father-Boyd Owens deceased.

Grandparentes-Sam Owens, deceased.  Manerua Galloway Owens, deceased.  Abraham Peters, deceased.  Louise Simon Peter, deceased.


INTERROGATORY NO. 5:

State every address where Jerry Owens ever resided, the inclusive dates of each residence, all persons who lived with Jerry Owens at each residence, the current or last known address and telephone number of all persons who lived with Jerry Owens, his relationships with these persons, and which of these persons smoked tobacco products while he lived with them.

ANSWER TO INTERROGATORY NO. 5:

1.   2756 Bartlett Street, Baton Rouge, LA 70805.  1998-present.  Lived with sister Evelyn Owens a non-smoker.  Her phone number is 225-359-6213.

2.   3925 Beachwood Drive. 1993-1998.  Baton Rouge, LA. 70805.  He lived with his wife Karen Owens.  She did not smoke while they lived together.  She now resides in Lafayette, LA.  Her phone number is 337-984-7630.

3.   3624 Eaton Street. 1991-1993.  Baton Rouge, LA 70805.  He lived with his wife Karen Owens who did not smoke at that time.  She now resides in Lafayette, LA.  Her phone number is 337-984-7630.

4.   Walnut Street in Hopkinsville, KY from 1984 - 1986.  Resided alone.

4

5.   Darmstadt, Germany.  1982-1984.  Lived in barracks with a fellow military man named Stetson Armbruster a non-smoker.

6.   Fort Hood, Texas. 1979-1982.  Lived in barracks but he had his own room.

7.   Gelnhasen, Germany.  1977-1979.  Lived in barracks but he had his own room.

8.   Fort Campbell, KY 1975-1977.  Lived in barracks but he had his own room.

9.   Fort Leonardwood, MO 1973-1975.  Roomed with Staff SGT. Mack a smoker.

10.   Karsrhue, Germany.  1971-1973.  Lived in barracks but he had his own room.

11.   Fort Bennett, GA.  3/71-12/71.  Lived with his wife Waudine Barnes Owens a non-smoker.  She now resides in New Brunswick, NJ.

12.   Schwienfurt, Germany.  1968-1970.  Lived in barracks but he does not remember rommates.

13.   San Marcus, TX 7/67-8/67.  He does not remember who he lived with but he does remember that his roommates smoked.

14.   Route 2, Box 16, Angie, LA 1948-5/67.  He lived with his mother Annie Peters Owens who is now deceased and his Father, Boyd Owens who is now deceased.

INTERROGATORY NO. 6:

Identify all injuries for which you seek recovery from any of the defendants in this lawsuit, and for each injury, identify every Health Care Provider (as defined above) who ever examined or treated Jerry Owens or with whom he consulted by stating the name, address, telephone number, and specialty of each Health Care Provider and the date of each consultation, examination, or treatment.

5

ANSWER TO INTERROGATORY NO. 6:

Plaintiffs seek damages for the lung cancer contracted by Jerry Owens. Sanzanna wants damages for watching her father suffer. He was treated at Our Lady of the Lake in Baton Rouge from 2/9/99-? He underwent six weeks of chemotherapy at Our Lady of the Lake. He has seen Dr. Richard Kerley.

He has been seen at the Earl K. Long Medical Center in Baton Rouge from 9/99 until the present.

INTERROGATORY NO. 7:

For each injury identified in response to Interrogatory No. 6., state the name and address of every Health Care Facility (as defined above) where Jerry Owens was hospitalized or at which he received care, treatment, or medication of for the injury, and as to each injury, state the dates Jerry Owens received such care, treatment, or medication and the type or nature of care, treatment, or medication received on such occasion.

ANSWER TO INTERROGATORY NO. 7:

He was treated at Our Lady of the Lake in Baton Rouge from 2/9/99-? He underwent six weeks of chemotherapy at Our Lady of the Lake. He has seen Dr. Richard Kerley.

He has been seen at the Earl K. Long Medical Center in Baton Rouge from 9/99 until the present.

INTERROGATORY NO. 8:

For each Health Care Provider (as defined above) whom Jerry Ownes ever consulted or who ever examined him for any routine physical examination or for any mental or physical illness, injury, condition, or disability other than the injuries identified in response to

6

Interrogatory 6, state the name, address, and specialty of the Health Care Provider, the illness, injury, condition, or disability for which she sought and received examination, consultation, or treatments, and the dates of all such examinations, consultations, and treatments.

ANSWER NO. 8:

Jerry Owens was seen at the Stanocola Medical Clinic on Foster Drive in Baton Rouge, LA. for back problems in 9/98. His physician was Dr. Daniel Ray. He was also seen at the VA hospital in New Orleans for ear problems from 1999-present.

INTERROGATORY NO. 9:

State the name and address of each Health Care Faciilty (as defined above) at which Jerry Owens was ever hospitalized or at which he ever received care, treatment, or medication, inpatient or outpatient, for any mental or physical illness, injury, condition, or disability other than the injuries identified in response to Interrogatory No. 6, and for each such Health Care Facility state the illness, injury, condition, or disability for which Jerry Owens was hospitalized, confined, treated, or received medication or care; the dates during which she was hospitalized or confined or on which she received such care, treatment, or medication; and type or nature of the care, treatment, or medication he received.

ANSWER NO. 8:

Plaintiffs do not have information regarding this interrogatory.

INTERROGATORY NO. 10:

State the name and residential and business address of each person you believe may have knowledge of facts relating to the claims in this lawsuit, including without limitation Jerry

7

Owens' smoking history, and for each such person briefly state the pertinent subjects on which the person has knowledge.

ANSWER NO. 10

Plaintiffs have no information regarding this interrogatory.

INTERROGATORY NO. 11:

If deceased, state whether an autopsy was performed on Jerry Owens and, if so, state the date and place the autopsy was performed and the name and address of the physician performing the autopsy.

ANSWER NO. 11

Jerry Owens is not deceased.

INTERROGATORY NO. 12:

Identify each and every place where Jerry Owens purchased tobacco products and the date of such purchase(s).

ANSWER NO. 12:

Forbes Grocery-Sandy Hook, MS 1964
Whites Grocery-Sandy Hook, MS 1964
Sam Owens Grocery-Sandy Hook, MS 1965
Guys Grocery-Angie, LA 1965
Schweggman's Supermarket, New Orleans, LA 1971
Airline Food Mart, Baton Rouge, LA 1986-1991
Sam's Wholesale, Baton Rouge, LA 1988-1991
Jefferson Grocery, Angie, LA 1964-1967
U.S. Army Abroad. 1968-1984

INTERROGATORY NO. 13:

Identify each fact supporting your contention that the distributor defendants in this case, i.e., Quaglino Tobacco and Candy Company, Imperial Trading Company, and George W.

Groetsch, Inc, in fact distributed the tobacco products purchased at retail by Jerry Owens.

ANSWER NO. 13:

Based on our information the plaintiff, Jerry Owens purchased cigarettes from

Schwegmanns and the above listed distributors distributed cigarettes to Schwegmanns.

Respectfully Submitted,

*P. T. Smith*

MURRAY LAW FIRM
STEPHEN B. MURRAY(9858)
PERRY M. NICOSIA (21777)
DAVID T. SMITH (26721)
909 Poydras Street
Suite 2550
New Orleans, LA 70112
Telephone: (504) 525-8100

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Answers to Interrogatories has been served upon counsel of record by hand this 3 5 day of ___May_____, 2001.

*S. T. Smith*

**DAVID T. SMITH**

9