

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUL 19 2001 AM II: 19

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY OWENS, et al. | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | NO. 00-0147 |
| | * | |
| VERSUS | * | SECTION "K" (4) |
| | * | |
| R.J. REYNOLDS TOBACCO COMPANY, | * | JUDGE DUVAL |
| et al. | * | |
| | * | MAGISTRATE ROBY |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants R.J. Reynolds Tobacco Company ("Reynolds"), R.J. Reynolds Tobacco Holdings, Inc. (formerly known and sued herein as RJR Nabisco, Inc.), Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company ("Brown & Williamson"), Fortune Brands, Inc. (formerly known and sued herein as American Brands, Inc.), BATUS, Inc., BATUS Holdings Inc., The Council for Tobacco Research – U.S.A., Inc. ("CTR"), and The Tobacco Institute, Inc. ("TI"), through their respective undersigned counsel, and with full reservation of any and all defenses and objections, including but not limited to insufficiency of process, insufficiency of service of process, lack of personal jurisdiction and improper venue, submit this supplemental opposition to plaintiffs' motion to remand. The

Process
X Dktd
CtRmDep
Doc.No.

memorandum is filed in accordance with this Court's Minute Entry dated April 19, 2001 (R.Doc. 21) and responds to plaintiffs' new arguments raised in their supplemental supporting memorandum.

As set forth below and in defendants' original opposition (R.Doc. 6), complete diversity of citizenship exists between plaintiffs and all properly-joined defendants. Accordingly, this Court has original jurisdiction over this matter, and plaintiffs' motion to remand should be denied.

## I. <u>INTRODUCTION</u>

Smoker Jerry Owens and his adult daughter Sanzanna Toles have sued diverse manufacturers of tobacco products and tobacco trade groups, and also have named as defendants four Louisiana companies: Quaglino Tobacco and Candy Company, Inc. ("Quaglino"); Imperial Trading Company, Inc. ("Imperial"); George W. Groetsch, Inc. ("Groetsch"); and Schwegmann Giant Super Markets, Inc. ("Schwegmann"). Quaglino, Imperial and Groetsch are Louisiana wholesale distributors of tobacco products. *See* Petition at ¶¶ 7(I)-(K). Schwegmann is a Louisiana retailer which, among thousands of other grocery products, previously sold tobacco products. *See* Petition at ¶ 7(L). Plaintiffs, both of whom are Louisiana citizens, claim that exposure to tobacco products has caused Jerry Owens "to become addicted and sustain substantial injuries, including lung cancer." Petition at ¶ 1.

Mr. Owens smoked various brands of cigarettes for approximately 28-30 years. He began smoking while living in Mississippi in approximately 1962 or 1963, around age 14. *See* Owens Depo. at 10-14 (attached as Exhibit A). Mr. Owens purchased his last pack of cigarettes and quit smoking in December 1991. *Id.* at 18, 25. He last purchased cigarettes from

Schwegmann – the only one of the four Louisiana defendants from whom he purchased cigarettes -- in 1971. *Id.* at 50; *see also* Answer to Interrogatory No. 12 (attached as Exhibit B). Mr. Owens never purchased any cigarettes directly from Quaglino, Imperial, or Groetsch. *Id.* at 26-28.

In November 1998, almost *seven years* after he last purchased and smoked cigarettes, Mr. Owens began coughing frequently and consulted his physician. *Id.* at 32. He knew that there was something wrong with him at that time, but he wasn't sure what it was. *Id.* Although he was not formally diagnosed with lung cancer until mid-January 1999, his doctor had advised him in late December, early January that " he thought it might have been cancer, but he wasn't sure and he did further testing." *Id.* at 49-50.

On December 27, 1999, almost *eight years* after he last purchased and smoked cigarettes, plaintiffs filed this action claiming that defendants, including Quaglino, Imperial, Groetsch, and Schwegmann somehow are liable. Quaglino, Imperial, Groetsch, and Schwegmann, however, played no part in designing, blending, assembling, packaging, or in any other way manufacturing the cigarettes consumed by Mr. Owens. Instead, Quaglino, Imperial, Groetsch, and Schwegmann merely purchased cigarettes in sealed, prelabeled packages and resold them to customers in the same sealed packages without ever altering or opening them.[1] All four of these local companies acted as mere middlemen in selling unaltered, prepackaged goods.

---

[1] *See* Affidavit of Iona Ball at ¶¶ 2, 3, 5 (attached as Exhibit C); Affidavit of Gilbert Stroud, Jr. at ¶¶ 2, 3, 5 (attached as Exhibit D); Affidavit of George J. Groetsch, Sr. at ¶¶ 2, 3, 5 (attached as Exhibit E); Affidavit of John F. Schwegmann at ¶¶ 2, 3, 5 (attached as Exhibit F). The originals of these affidavits are exhibits to defendants' original opposition to remand (R.Doc. 6).

On or about January 14, 2000, defendants removed plaintiffs' action to this Court.[2] Plaintiffs have moved to remand, arguing that their petition asserts viable claims against the Louisiana defendants. Under Louisiana law and applicable Fifth Circuit authority, however, it is clear there is no possibility of any recovery against Quaglino, Imperial, Groetsch, and Schwegmann on any theory. As more fully set forth below, plaintiffs cannot recover on their redhibition claims against these Louisiana defendants because the claims are prescribed, as well as preempted by federal law. Nor can plaintiffs recover on their alleged "negligent sales to minors claim." That claim, too, is prescribed, and plaintiffs have no other viable causes of action against the distributors and retailer in this matter. Accordingly, pursuant to the fraudulent joinder doctrine, the citizenship of these four defendants should be disregarded and plaintiffs' motion to remand should be denied.[3]

## II. **BURDEN OF PROOF**

Although defendants bear the burden of proof on this motion to remand, this does not mean that the plaintiffs can simply rest on unfounded allegations in their petition. Well-settled Fifth Circuit precedent establishes that a consideration of fraudulent joinder is similar to a summary judgment proceeding. The defendant has the burden in both settings, but a plaintiff still must have a "reasonable basis" of recovery against an in-state defendant for the plaintiff to prevail. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir.), *cert. denied*, 510 U.S. 868 (1993).

---

[2]    Defendants removed pursuant to 28 U.S.C. § 1446. *See* Notice of Removal at ¶ 23.

[3]    Although the only issue before the Court in this remand motion is whether plaintiffs state a valid claim against the Louisiana defendants, the prescription and other defenses apply equally to the diverse defendants.

Moreover, this Court is directed to "pierce the pleadings" to determine whether there is support for the claims in a petition. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The Fifth Circuit has held that "[i]n this circuit, a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment. A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) (citations omitted). In piercing the pleadings, this Court is to conduct a "summary judgment-like procedure" and consider evidence outside of the pleadings, such as affidavits. *Carriere*, 893 F.2d at 100; *see also Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994).

Contrary to the plaintiffs' unsupported allegations, defendants rely on plaintiffs' own deposition testimony, answers to interrogatories, and affidavits of the distributor and retailer defendants to establish that plaintiffs' redhibition claim against the distributors and retailer is both prescribed and preempted. Courts have determined that when fraudulent joinder is at issue, a court may "determine if defendants have any affirmative defenses barring those claims. 'Should the defendants prevail on any of these [affirmative] defenses, it necessarily follows that joinder was fraudulent . . .'" *Yates v. Southwestern Life Ins. Co.*, 1998 WL 61033, at *2 n.1 (E.D. La. Feb. 12, 1998) (J. Vance) (quoting *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 753 (5th Cir 1996)). In light of the evidence before this Court and the applicable law, the distributors and retailer have been fraudulently joined and their citizenship should be ignored for diversity purposes. *See also* Defs. Original Opp. Memo. at 4-5 (R.Doc. 6).

### III. LAW AND ARGUMENT[4]

In support of their motion to remand, plaintiffs argue that, even after conducting discovery, defendants have not met their heavy burden of proving fraudulent joinder with respect to any of the three issues on which limited discovery has occurred. Pls. Suppl. Memo at 3. To the contrary, and as more fully set forth below, defendants have established:

- Plaintiffs' claims have prescribed;

- Plaintiffs did not purchase any cigarettes from distributors Quaglino, Imperial, and Groetsch, and has no evidence or knowledge that they distributed any cigarettes actually purchased by Mr. Owens; and,

- Although Mr. Owens purchased cigarettes from Schwegmann, his last purchase from Schwegmann was in 1971; thus, any redhibition claim has long prescribed.

#### A.    *Badon* **Does Not Compel Remand.**

In a supporting memorandum filed prior to discovery (R.Doc. 4), plaintiffs argue that "[t]he decision of the Fifth Circuit in *Badon v. R.J. Reynolds (sic)*, 236 F.3d 282 (5th Cir. 2000), mandates that this case, which involves in-state defendants be remanded to state court." *See generally* Plaintiffs' Memo. in Support of Motion to Remand and Opposing Limited Discovery. As this Court impliedly recognized in allowing limited discovery, *Badon* does not compel immediate remand of this case. In *Badon*, the Fifth Circuit held simply that "there is arguably a reasonable basis for predicting that plaintiffs might establish redhibition or article 2475 liability against the Louisiana wholesalers under Louisiana law as it stands today." *Id.* at

---

[4] The arguments raised in plaintiffs' original motion to remand and supporting memorandum already have been addressed by defendants in their original Memorandum in Opposition to Motion to Remand filed in this matter on February 22, 2000 (R.Doc.6). Rather than repeating those arguments, defendants hereby incorporate by reference all arguments in that opposition as if fully set forth herein.

286. But the defendants here do not argue that plaintiffs have no theoretical possibility of establishing a redhibition claim against local tobacco distributors and retailers; but rather, as fully discussed below, defendants contend that any redhibition claim that plaintiffs may have against the distributors and retailer in this case is both prescribed and preempted. Thus, pursuant to the fraudulent joinder doctrine, the Court should disregard the citizenship of these four defendants for diversity purposes and should find that complete diversity exists.

**B.    Complete Diversity Exists Because The Distributors And Retailer Have Been Fraudulently Joined.**

**1.    Plaintiffs Cannot Recover On Their Redhibition Claim Against The Louisiana Defendants.**

Plaintiffs focus their motion to remand on the alleged redhibition claim against the distributors and retailer.   Plaintiff Jerry Owens testified, however, that he last purchased and smoked cigarettes in December 1991. *See* Owens Depo. at 18, 25 (Exhibit A).   Additionally, in his answers to interrogatories, Mr. Owens confirmed that he last purchased and smoked cigarettes in 1991. *See* Answer to Interrog. No. 12 (Exhibit B).  This lawsuit was not filed until December 27, 1999, more than *eight years* after the plaintiff quit smoking and last purchased cigarettes.  Plaintiffs do not have a redhibition claim against the distributors and retailer arising out of the purchase of cigarettes more than eight years before suit was filed because redhibition claims against sellers who did not know of the alleged defects[5] are *prescribed after one year from the date of purchase* under the law in effect at the time the plaintiff last purchased

---

[5]    *See, e.g.,* Exhibits C, D, E, and F.  These affidavits establish that the distributors and retailer fall into the category of good faith sellers who did not know of the product defects alleged by plaintiffs.  There is no evidence that the distributors and retailer were privy to knowledge concerning tobacco products other than what was available to the

cigarettes. La. Civ. Code art. 2534 (1870).[6]  Therefore, plaintiffs' alleged redhibition claim against the distributors and retailer prescribed no later than December 1992. As such, the distributors and retailer are fraudulently joined as defendants in this litigation.

Once a defendant establishes that a redhibition claim has prescribed, the burden shifts to the buyer to prove interruption or suspension of prescription. *Manning v. Scott-Hixson-Hopkins, Inc.*, 605 So. 2d 233, 235 (La. App. 2 Cir. 1992). Apparently concerned that their claims are prescribed, plaintiffs allege in their petition and supplemental memorandum that prescription was interrupted on two separate grounds. Neither ground, however, saves plaintiffs' redhibition claim against the distributors and retailer.

As the first basis for interruption, plaintiffs allege that "there are many factual issues that must be decided by the trier of fact prior to a ruling on prescription." Pls. Suppl. Memo. at 6. Plaintiffs claim that the trier of fact will have to answer "when did the damage occur that sufficiently put the plaintiff on notice that he had a potential lawsuit?" *Id.* Plaintiffs thus contend that the redhibition claim did not begin to run until Mr. Owens was diagnosed with lung cancer and that, accordingly, his case has not prescribed. Plaintiffs misconstrue the law relating to prescription of a redhibition claim. Under Louisiana law, the prescriptive period for

---

general public. Plaintiffs have produced no facts or arguments to establish that the distributors and retailer were anything but good faith sellers.

[6]  Prior to the 1993 amendments to Article 2534, which became effective on January 1, 1995, Article 2534 provided that "[t]he redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale." Although the 1993 amendments changed this time period, Section 4 of Act 1993, No. 841, provided that "the provisions of this Act shall have prospective application only, and shall not affect any sales transaction executed before January 1, 1995, which sales transaction shall be governed by the law in effect prior thereto." As plaintiff Owens' last purchase of cigarettes was almost four years prior to January 1, 1995, this transaction is governed by the one year prescriptive period in effect at that time.

redhibition actions begins to run from the date the defect or malfunction is manifest. *Lee v. Equitable Life Assur. Soc. of U.S.*, 391 So. 2d 37, 39 (La. App. 3 Cir. 1980), *writ denied*, 395 So. 2d 1363 (La. 1981). Here, the alleged redhibitory defects of which Mr. Owens complains are the alleged disease causing propensity of cigarettes and the alleged addictiveness of cigarettes. However, Mr. Owens was aware of these defects in 1991 at the latest. In his deposition, Mr. Owens clearly indicated that he quit smoking in 1991 due to his brother's death from cancer. Owens Depo. at 25, 34-35 (Exhibit A). His brother was a smoker. *Id.* at 35. He was aware of the risks of smoking, including addiction. *Id.* at 40-43, 45, 56. Thus, when plaintiff's brother was diagnosed with and died from cancer allegedly caused by smoking, the defect in cigarettes of which Mr. Owens complains was certainly manifest. He was so concerned about adverse health risks that he quit cold turkey. *Id.* at 34-35. Therefore, prescription began running no later than December 1991.

Moreover, plaintiffs' reliance on a "discovery rule" to prevent prescription from running until the date Mr. Owens discovered defendants' alleged wrongdoing, *i.e.*, the date he was diagnosed with lung cancer in January 1999, is misplaced. Under prior Article 2534, the "discovery rule" applied only to a bad faith seller, one who knew of the vice yet failed to declare it. The "discovery rule" cannot apply to the Louisiana defendants here who, as mere distributors and retailer, possessed no knowledge of the qualities of cigarettes beyond those of the ordinary consumer. The Louisiana defendants here are precisely such entities. It is uncontested that Quaglino, Imperial, and Groetsch are wholesale distributors of cigarettes, not manufacturers. Exhibit C at ¶ 13; Exhibit D at ¶ 13; Exhibit E at ¶ 13. *See also* Petition at ¶¶ 7(I)-(K). Schwegmann was a retailer, which sold cigarettes among thousands of other products. Exhibit F at

¶ 13.[7]  *See also* Petition at ¶ 7(L).  Similarly, it is uncontested that Quaglino, Imperial, Groetsch and

Schwegmann purchased all cigarettes they sold in sealed packages, which were labeled and

packaged by the manufacturers, and resold in the same sealed packages without altering the

contents in any manner.  Exhibit C at ¶¶ 2-6; Exhibit D at ¶¶ 2-6; Exhibit E at ¶¶ 2-6; Exhibit F at ¶¶

2-6.  Moreover, because the health risks of smoking -- including the alleged risk of nicotine

addiction -- are widespread and common knowledge, sellers of cigarettes have no duty to warn of

such risks.  *Allgood v. R.J. Reynolds*, 80 F.3d 168, 172 (5th Cir.), *cert. denied*, 519 U.S. 930

(1996); *Humbles v. R.J. Reynolds Tobacco Co.*, 2000 WL 533722 (E.D. La. May 2, 2000) (attached

as Exhibit (G).  Consequently, Mr. Owens was bound to institute any redhibition action he might

have had against these good faith sellers "within one year, at the farthest, commencing from the

date of the sale."  La. Civ. Code art. 2534 (1870).  *See Sanders v. R.J. Reynolds Tobacco Co.,*

No. 97-636 slip op. at p. 5 (M.D. La. 1998) (attached as Exhibit H).

      As a second basis for interruption, plaintiffs claim that the filing of the *Gloria*

*Scott* class action,[8] which was filed on May 24, 1996, and the subsequent class certification,

somehow interrupted the statute of limitations for all of plaintiffs' claims.  *See* Pls. Suppl.

Memo. at 8.  This argument fails for several reasons.  First, the filing of a class action does not

revive a previously prescribed claim.  In this case, Jerry Owens had no claim to preserve when

the *Scott* class action was filed in May 1996.  As established above, plaintiffs' redhibition claims

---

[7]    Schwegmann ceased operating retail outlets on February 14, 1997.  Therefore, even if plaintiffs could state a viable tort or redhibition claim against it, which is denied, those claims are prescribed.  *See* La. Civ. Code art. 3492 ("[d]elictual actions are subject to a liberative prescription of one year").

[8]    *Gloria Scott, et al. v. The American Tobacco Company, Inc.*, C.A. No. 96-8461 (La. Civ. Dist. Ct. filed May 24, 1996).

against the distributors and retailer prescribed at the latest in December 1992, more than four years prior to the filing of the *Scott* class action. The *Scott* filing cannot revive plaintiffs' already prescribed claim. For this reason, the cases cited by plaintiffs are inapplicable.

Second, because the *Scott* class action never was certified as to the Louisiana defendants in that case, it cannot interrupt prescription for plaintiffs' claims against those defendants here.[9] But if in fact the *Scott* class action has any relevance to the claims against the Louisiana defendants here, plaintiffs have overlooked a critical ruling in *Scott*. In the very same judgment certifying a smoking cessation/medical monitoring class in *Scott*, the state court granted an exception of no cause of action dismissing all claims against the Louisiana defendants,[10] including some of the very Louisiana defendants against whom plaintiffs in this case now assert claims. That judgment, dismissing all claims against the Louisiana defendants, is now final and is *res judicata* as to all of plaintiffs' claims against those defendants here. *See* La. Rev. Stat. § 13:4231. Simply put, by claiming that *Scott* interrupts prescription, plaintiffs are in effect claiming class membership. As class members, their claims are barred.

---

[9]     Moreover, even if tolling had occurred, it would have been potentially for only the limited time period between the filing and the denial of class certification as to the Louisiana defendants. Plaintiffs themselves recognize that "if class certification were subsequently denied [after the filing of the case], prescription commenced to run again." Pls. Suppl. Memo. at n. 2 (quoting *Factor VIII v. Alpha Therapeutic Corp.*, 2000 WL 282782 at 4 (E.D. La. 2000). If any interruption of prescription potentially occurred as to plaintiffs' claims, it was only for the eleven month time period from the filing of *Scott* (May 24, 1996) to the denial of certification as to the Louisiana defendants (April 16, 1997), and prescription still would have run by April 16, 1998, almost twenty month prior to the filing of plaintiffs' petition on December 27, 1999.

[10]     The granting of an exception of no cause of action is the equivalent of a finding of fraudulent joinder. *See Armond v. Shoney's Inc.*, 1991 WL 162120 at *2 (E.D. La. Aug. 9, 1991) (attached as Exhibit I).

Therefore, neither of plaintiffs' arguments for interruption of prescription against the distributors and retailer saves their redhibition claim, even when the Court evaluates the contested factual allegations in the light most favorable to plaintiffs. Because plaintiffs' redhibition claim against the distributors and retailer is prescribed, they were fraudulently joined as defendants in this litigation and plaintiffs' motion should be denied. *See e.g., Yates*, 1998 WL 61033, at *6.

2. **Plaintiff's Claims Against The Distributors And Retailers Are Preempted.**

In addition to prescription, another fatal problem with plaintiffs' claims against the distributors and retailer is that the claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-40 ("FCLA"). Section 1334 of the Act specifically prohibits any state law "requirement or prohibition" that is "based on smoking and health . . . with respect to the advertising or promotion" of cigarettes bearing certain warning labels prescribed by Congress. Because preemption is a pure issue of federal law, this Court may decide this issue without making any determination of Louisiana law. Preemption is an independent reason that there is not a reasonable basis for determining that the plaintiff might recover against the distributors, and therefore they are fraudulently joined.

The FCLA mandates what warnings are to be provided about the risks of smoking and prescribes the methods for issuing those warnings (*e.g.*, placement on packages and in advertisements). The U.S. Supreme Court ruled in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 514 (1992), that any state law claim of a plaintiff that a defendant should have provided "additional, or more clearly stated, warnings" than those mandated by Congress are preempted by federal law. *See also Allgood*, 80 F.3d at 171 (holding that claims based on allegation of

concealment or failure to warn are preempted). Several courts have found fraudulent joinder of non-diverse cigarette wholesalers, and denied motions to remand on that basis, after holding that similar failure to warn claims against those defendants were preempted. *See, e.g., Crooke v. R.J. Reynolds Tobacco Co.*, 978 F. Supp. 1482, 1485 (N.D. Ga. 1997); *Perez v. Brown & Williamson Tobacco Co.*, 1997 WL 1008705, *2-4 (S.D. Tex. Mar. 17, 1997) (attached as Exhibit J).

Plaintiffs' claims against the distributors and retailers are premised upon a failure to warn of the alleged risks of smoking. *See Klem v. E.I. Dupont De Nemours & Co.*, 19 F.3d 997, 1003 (5th Cir. 1994) (negligence and redhibition claims are essentially failure to warn claims). Accordingly, the claims are preempted. *Siegel v R.J. Reynolds Tobacco Co.*, No. 90-366-B, Magistrate Judge's Report at 3-4 (M.D. La. Jan. 12, 1993) (negligent failure to warn, fraudulent concealment, implied warranty and redhibition claims are preempted) (attached as Exhibit K, along with Judge Polozola's August 10, 1993 Opinion and August 11, 1993 Judgment, adopting the Magistrate Judge's Report and granting the remaining part of defendant's motion to dismiss); *Perez,* 1997 WL 1008705 at *2-4 (negligence and implied warranty claims are preempted). This Court should therefore determine that plaintiffs' claims against the distributors and retailers have been preempted, and thus they have been fraudulently joined in this matter. *See also* Defs. Orig. Opp. Memo. at 19-20.

3.      **No Other Cause Of Action Supports A Claim Against The Distributors And Retailers.**[11]

Plaintiffs' memorandum supporting their motion to remand only discusses one purported ground for stating a cause of action against the distributors and retailers: redhibition. As shown above, plaintiffs' redhibition claims are barred by prescription and preemption.

Out of an abundance of caution, defendants note that even causes of action that plaintiffs do not address in their brief would not support a claim against the distributors and retailers. Of course, by not raising these arguments in their principal brief, any such arguments already are waived.[12] But even if plaintiffs were to try to argue new claims, it is clear that they cannot form the basis for relief against the distributors and retailers.

a.      **Negligence**

Any claim for negligence against the distributors and retailers is preempted for all of the same reasons discussed previously. In addition, under what is often referred to as the "sealed container doctrine," a distributor or retailer who does not manufacture a product, but instead simply sells unaltered, prepackaged goods, cannot be held liable under the Louisiana law of negligence. *See Ard v. Kraft, Inc.*, 540 So. 2d 1172, 1177 (La. App. 1 Cir.), *writ denied*, 542

---

[11]    Plaintiffs' petition is vague regarding which causes of action may apply to the distributors and retailers. Out of an abundance of caution, defendants address all causes of action pled by plaintiffs in their petition, even though it is unclear that they apply to the distributors and retailers.

[12]    For example, in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256 (5th Cir. 1995), the Fifth Circuit affirmed a denial of a motion to remand on the grounds of fraudulent joinder. The court refused to consider arguments regarding alternative causes of action against in-state defendants that were not raised by the plaintiffs in their initial brief; by not making the arguments until the reply brief, the arguments were waived. "[W]e do not consider issues raised for the first time in a reply brief." *Id.* at 260 n.9. *See also Mullen v. Treasure Chest Casino, L.L.C.*, 1997 WL 539917, at *3 n.4 (E.D. La. Aug. 29, 1997) ("Issues raised for the first time in a reply memorandum deprive a non-moving

So. 2d 515 (La. 1989). A vendor may be held liable if it adulterates, tampers with, or modifies the product, or if it holds out the product as its own. *See, e.g., Guidry v. Frank Guidry Oil Co.,* 579 So. 2d 947, 951-52 (La. 1991); *see also Chappuis v. Sears Roebuck & Co.,* 358 So. 2d 926, 930 (La. 1978), *writ denied,* 366 So. 2d 576 (1979). Plaintiffs, however, do not contend in their petition or motion to remand that the distributors and retailers made any cigarettes or other tobacco products, altered any of the products in question, or made any representations to the public that they did so.

Louisiana law also does not impose a duty upon suppliers or distributors of packaged goods to make a special inspection of the goods to determine the possibility of inherent vices or defects. *Nelton v. Astro-Lounger Mfg. Co., Inc.,* 542 So. 2d 128, 131 (La. App. 1 Cir. 1989). Indeed, when an allegedly defective product is in a sealed container or package, a distributor or retailer can reasonably rely upon the assumption that the product is not defective. *See Reeves v. Great Atlantic & Pacific Tea Co., Inc.,* 370 So. 2d 202, 209 (La. App. 3 Cir.), *writ denied,* 371 So. 2d 835 and 372 So. 2d 568 (La. 1979).

Plaintiffs do not and cannot dispute this law. In their attached affidavits, the distributors and retailer attest to the facts establishing them as good faith suppliers with no special knowledge or control over the tobacco products they distributed. *See* Exhibits C, D, E, and F. In light of these affidavits, it is clear that the distributors and retailer did not have any special knowledge of any alleged defects in tobacco products. They did not manufacture or alter these products, but instead simply received and then sold sealed containers that were packaged

---

party of a meaningful opportunity to respond" and thus are not considered); *Lindsey v. Prive Corp.,* 161 F.3d 886, 894 n.5 (5th Cir. 1998).

by the manufacturers.  Accordingly, Louisiana law requires that the distributors and retailers be

treated as good faith sellers of sealed containers who are, as such, not liable in tort.

**b.    Remaining Claims**

The remaining causes of action in plaintiffs' petition (that plaintiffs do not address

in their brief) also would not support a claim against the distributors and retailers.  In particular:

- Plaintiffs have no fraud or negligent misrepresentation claim against the distributors and retailers because the only evidence, the distributors' and retailers' affidavits, establishes that the distributors and retailers had no greater information about the risks associated with the use of tobacco products than that which is generally available to the public.[13]  Moreover, fraud claims are not pled with particularity, as required by Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud."  *United States ex rel. Thompson v. Columbia/HCA Health Care Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

- The affidavits establish that the distributors and retailers made no express warranty to plaintiffs concerning any tobacco products.[14]

- Any breach of implied warranty claim against the distributors and retailers fails for all of the same reasons that a redhibition claim fails.[15]

- There is no evidence that the distributors and retailers intended to cause plaintiffs emotional distress.

---

[13]   *See* Affidavits, Exhibits C, D, E, and F.

[14]   *See* Affidavits, Exhibits C, D, E, and F.

[15]   Although the Petition cites Louisiana's redhibition statute and the Louisiana law of implied warranty as if they are two distinct concepts, the reality is that they are so intertwined that courts treat them as essentially synonymous.  Sometimes courts speak of a redhibition claim, sometimes courts speak of an implied warranty of fitness for ordinary use claim, and sometimes courts speak of an implied warranty of freedom from redhibitory defects.  *See, e.g., Hob's Refrigeration and Air Conditioning, Inc. v. Poche*, 304 So. 2d 326, 327 (La. 1974).  Whatever the label, the seller is simply bound to offer a product that is reasonably fit for the intended, ordinary use.  La. Civ. Code arts. 2520, 2524.  As to all of the arguments relevant to the motion to remand, this is a distinction without difference.  A breach of implied warranty claim has all of the requirements of a redhibition claim that are discussed above, and both claims against the distributors fail for the same reasons.

5922761

- Plaintiffs cite no law that could possibly support a strict liability claim against the distributors and retailers.

Accordingly, and unsurprisingly, the causes of action *not* addressed by plaintiffs provide no greater support for their motion to remand than the redhibition claim that *is* addressed in their memorandum.[16]

### C.    Plaintiffs Could Not Identify Quaglino, Imperial And Groetsch As The Distributors Of Cigarettes Purchased By Mr. Owens

Plaintiffs argue that defendants could not disprove the fact that the named distributors were the actual distributors of cigarettes to plaintiffs. Pls. Suppl. Memo. at 4. To the contrary, when asked whether he ever bought any cigarettes from Quaglino, Mr. Owens replied, "not to my knowledge." Owens Depo. at 26 (Exhibit A). Similarly, when questioned about purchases from Imperial, Mr. Owens agreed that he never bought a cigarette from Imperial. *Id.* at 26-27. Likewise, when asked about purchases from Groetsch, Mr. Owens confirmed that he never bought a cigarette from Groetsch. *Id.* at 27-28. Admittedly, Mr. Owens testified that he in fact purchased cigarettes from Schwegmann in New Orleans and Baton Rouge. However, his last purchase from Schwegmann was in 1971! *Id.* 15-18, 50; Answer to Interrog. No. 12 (Exhibit B). Thus, pursuant to Article 2534, any redhibition claim against Schwegmann would have prescribed in 1972. In any event, plaintiffs' arguments concerning the identity of the distributors and retailer is a red herring. As established above, all claims against these defendants are both prescribed and preempted.

---

[16]    Although not addressed in their remand pleadings, plaintiffs also cannot establish a conspiracy claim against the Louisiana defendants. On virtually the same affidavits, the Fifth Circuit found that there was no reasonable basis for predicting that plaintiffs might establish liability on their conspiracy claim against the in-state defendants. *Badon v. RJR Nabisco, Inc.,* 224 F.2d 382, 393 (5th Cir. 2000).

- 17-

## IV. <u>CONCLUSION</u>

The *Badon* decision on which plaintiffs rely in their motion to remand does not mandate remand here. Notwithstanding plaintiffs' attempt to manufacture a factual dispute, the facts of this case are simple. Jerry Owens last purchased cigarettes in December 1991. Quaglino, Imperial, Groetsch, and Schwegmann are good faith distributors and retailer of cigarettes. Under prior Article 2534, plaintiffs' alleged cause of action for redhibition against the distributors and retailer is prescribed.

Moreover, plaintiffs' alleged redhibition claims are preempted by federal law, and plaintiffs have no other viable causes of action against the distributors and retailer in this matter. Even causes of action that plaintiffs do not address in their three briefs would not support a claim against the distributors and retailer. Accordingly, pursuant to the fraudulent joinder doctrine, the citizenship of these distributor and retailer defendants should be disregarded and complete diversity exists between the parties. The plaintiffs' motion to remand should therefore be denied.

Respectfully submitted,

*Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Stephen H. Kupperman, 7890, T.A.
Dorothy H. Wimberly, 18509
STONE, PIGMAN, WALTHER,
  WITTMANN & HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, Louisiana 70130
(504) 581-3200

590227v.1

Mark A. Belasic
Dennis L. Murphy
Kevin D. Boyce
JONES, DAY, REAVIS & POGUE
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

Counsel for R.J. Reynolds Tobacco
Company

Carmelite M. Bertaut, 3054
William F. Grace, 6199
Peter J. Rotolo III, 21848
CHAFFE, MCCALL, PHILLIPS,
  TOLER & SARPY, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163

Of Counsel:

Gordon A. Smith
William E. Hoffman, Jr.
William L. Durham, II
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303
(404) 572-4600

Counsel for Brown & Williamson Tobacco
Corporation, individually and as successor by
merger to The American Tobacco Company,
Fortune Brands, Inc. (formerly known and
sued herein as American Brands, Inc.),
BATUS, Inc., and BATUS Holdings Inc.

Alan H. Goodman, 6131
Thomas M. Benjamin
LEMLE & KELLEHER, L.L.P.
2100 Pan American Life Center
601 Poydras Street
New Orleans, Louisiana 70130
Telephone: (504) 584-9419

Counsel for The Tobacco Institute, Inc.


David H. Nelson, 9926
THEUS, GRISHAM, DAVIS & LEIGH
1600 Lamy Lane
P.O. Box 4768
Monroe, Louisiana 71211
Telephone: (318) 388-0100

Counsel for Council for Tobacco Research –
U.S.A., Inc.


Phillip A. Wittmann, 13625
Stephen H. Kupperman, 7890, T.A.
Dorothy H. Wimberly, 18509
STONE, PIGMAN, WALTHER,
 WITTMANN & HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, Louisiana 70130
(504) 581-3200

Counsel for R.J. Reynolds Tobacco Holdings,
Inc. (formerly known and sued herein as RJR
Nabisco, Inc.)

-20-

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing supplemental memorandum has been served upon plaintiffs' counsel by hand delivery and upon all defense counsel of record by placing same in the United States Mail, postage prepaid and properly addressed, this 12th day of July, 2001.

*Dorothy H. Wimberly*

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED